UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MISSOURI DEPARTMENT OF NATURAL ) <br> RESOURCES, DIVISION OF STATE PARKS ) <br> and ) <br> BEN ELLIS, DIRECTOR, MISSOURI ) <br> DEPARTMENT OF NATURAL RESOURCES, ) <br> DIVISION OF STATE PARKS, IN HIS ) <br> OFFICIAL CAPACITY ) <br> ) <br> Defendants. ) | **COMPLAINT** <br><br> Case No. 4:19-cv-421 |

The United States of America, by the authority of the Attorney General of the United States, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this complaint and allege as follows:

NATURE OF THE ACTION

1. This is a civil action brought against the Missouri Department of Natural Resources, Division of State Parks ("MDNR" or "Defendant") and its director, Ben Ellis, in his official capacity (collectively, the "Defendants"), pursuant to Sections 106, 107(a), and 113(g) of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9606, 9607(a), and 9613(g) ("CERCLA"), regarding Operable Unit 1 (OU-1) of the Big River Mine Tailings Superfund Site in St. Francois County, Missouri ("Site"). Plaintiff seeks the recovery of its unreimbursed response costs incurred, and to be incurred, and the performance of response actions by the Defendant consistent with the National Contingency Plan, 40 C.F.R. Part 300 ("NCP"). The United States also seeks a declaratory judgment pursuant to Section 113(g)(2)

of CERCLA, 42 U.S.C. §9613(g)(2), holding the Defendant liable for all future response costs that will be binding in any subsequent action or actions to recover further response costs incurred by the United States at or in connection with OU-1 of the Site.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over the subject matter of this action and over the Defendant under 28 U.S.C. §§ 1331, 1345, and 1367, and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b).

3.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the relevant releases or threatened releases of hazardous substances occurred within this district.

## STATUTORY FRAMEWORK

4.  CERCLA was enacted in 1980 to provide a comprehensive governmental mechanism for abating releases and threatened releases of hazardous substances and other pollutants and contaminants and for funding the costs of such abatement and related enforcement activities, which are known as "response actions." 42 U.S.C. §§ 9604(a); 9601(25).

5.  Under Section 104(a)(1) of CERCLA, 42 U.S.C. § 9604(a)(1):

> Whenever (A) any hazardous substance is released or there is a substantial threat of such a release into the environment, or (B) there is a release or substantial threat of release into the environment of any pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare, the President is authorized to act, consistent with the national contingency plan, to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance, pollutant, or contaminant at any time (including its removal from any contaminated natural resource), or take any other response measure consistent with the national contingency plan which the President deems necessary to protect the public health or welfare or the environment. When the President determines that such action will be done properly and promptly by the owner or

    operator of the facility or vessel or by any other responsible party, the President may allow such person to carry out the action, conduct the remedial investigation, or conduct the feasibility study in accordance with Section 9622 of this title.

  6. For CERCLA response actions and enforcement purposes, the Administrator of EPA is the President's delegate, as provided in operative Executive Orders.

  7. Under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a):

    (1) [T]he owner and operator of a vessel or a facility,

    (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, [or]

    (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, . . .

    shall be liable for—

    (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan . . .

  8. Under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), the United States is also authorized to seek injunctive relief necessary to abate the imminent and substantial endangerment to the public health or welfare, or the environment, that may result from an actual or threatened release of a hazardous substance at or from a facility.

## THE SITE

  9. The Site is located in southeastern Missouri about seventy miles south of St. Louis, within St. Francois County, Missouri.

10. Lead mining began in St. Francois County in the early 1700s and was continuous from the mid-1700s until the mid-1970s. During this approximately 200 year period of intensive lead mining, the mines, milling operations, and associated facilities in the county became known as Missouri's "Old Lead Belt"

11. Between 1864 and 1970, more than eight million tons of lead concentrate were produced in the Old Lead Belt. Production of this concentrate created an estimated 250 million tons of waste, primarily in the form of chat and tailings. Chat is relatively coarse-grained rock fragments produced during the milling process and transported to large waste piles that eventually reached as much as 200 feet in height. Tailings, a finer-grained waste product of later milling technologies, were disposed via discharge into liquid impoundments covering as much as several hundred acres, known as tailings ponds.

12. The Site contains eight large distinct chat pile and tailings pond areas, which together cover thousands of acres: Desloge (also called Big River); National; Leadwood; Elvins (also called Rivermines); Bonne Terre; Federal (which contains St. Joe State Park); Doe Run; and Hayden Creek (each a "Waste Pile" and collectively, the "Waste Piles")

13. Each of the Waste Piles contain hazardous substances such as lead, cadmium, and zinc.

14. Numerous environmental investigations have been conducted in St. Francois County. These investigations show that mine waste materials containing lead, cadmium and zinc have migrated from the Waste Piles via wind erosion, bank erosion, storm water runoff, leachate and mechanical transport. As a result, surface waters, sediments, and soils, including residential soils, in St. Francois County contain elevated levels of lead, cadmium and zinc.

15. Other sources of lead at the Site include lead smelting operations, degraded lead paint on homes and businesses, and leaded gasoline.

16. OU-1 of the Site comprises all "Residential Yards" (a term which includes properties that contain single and multi-family dwellings, apartment complexes, vacant lots in residential areas, schools, daycare centers, playgrounds, parks, and greenways) within St. Francois County where lead has come to be located.

17. Lead is a metal that has been listed as a hazardous waste ("D008") in the regulations for the Resource Conservation and Recovery Act ("RCRA"). EPA classifies lead as a probable human carcinogen and as a cumulative toxicant. Exposure to lead can increase the risk of future adverse health effects, such as damage to the central nervous system, peripheral nervous system, and kidney and blood disorders. Lead poisoning causes decreased physical fitness, fatigue, sleep disturbance, headache, aching bones and muscles, digestive symptoms (particularly constipation), abdominal cramping, nausea, vomiting, and decreased appetite. With increased exposure, symptoms include anemia, pallor, a "lead line" on the gums, and decreased hand grip strength. Central nervous system effects include severe headaches, convulsions, coma, delirium, and possibly death. The kidneys can also be damaged after long periods of exposure to lead, with loss of kidney function and progressive azotemia. Reproductive effects in women include decreased fertility, increased rates of miscarriage and stillbirth, decreased birth weight, premature rupture of membrane, and/or pre-term delivery. Reproductive effects in men include erectile dysfunction, decreased sperm count, abnormal sperm shape and size, and reduced semen volume. A significant amount of lead that enters the body is stored in the bone for many years and can be considered an irreversible health effect.

18. Young children (typically defined as seven years of age or below) are the most sensitive population group potentially exposed to lead contamination at the Site. Young children are most susceptible to lead exposure because they have higher contact rates with soil and dust, absorb lead more readily than adults, and are more sensitive to the adverse effects of lead than older children-and adults. The effect of exposure to lead contamination of greatest concern in children is impairment of the nervous system, including learning deficits, lowered intelligence, and adverse effects on behavior.

19. In May 1997, the Missouri Department of Health and Senior Services ("MDHSS") released a draft Lead Exposure study of children in the Old Lead Belt of St. Francois County. The MDHSS study, included sampling children's blood, sampling environmental media such as soil and dust, and questioning residents about their lifestyle as it related to lead exposure. The study compared the results of blood lead levels collected from children in the Old Lead Belt of St. Francois County to blood lead level test results collected from children during the study on a control area, Salem, Missouri, located outside the Site. In the Old Lead Belt, about 17% of the children tested showed a blood lead level of more than 10 micrograms/deciliter whereas only about 3% of the children in Salem showed a blood lead level of more than 10 micrograms/deciliter.

20. EPA conducted a Baseline Human Health Risk Assessment ("HHRA") for the Site in 2009. The HHRA assesses the potential risks to humans, both present and past, from Site related contaminants present in environmental media including surface soil, indoor dust, sediment, surface water, groundwater, and fish tissue. The results of the HHRA are intended to inform risk managers and the public about potential human health risks attributable to site-related contaminants and to help determine if there is a need for action at the Site.

21. The HHRA identified lead as the primary contaminant of concern for OU-1 of the Site.

22. In accordance with the NCP, EPA issued a Record of Decision (ROD) for OU-1 on September 30, 2011. EPA's selected Remedial Action, as fully set forth in the ROD, calls for the excavation of soil from residential yards until lead concentrations in the top 12 inches are below 400 parts per million, or below 1,200 parts per million below 12 inches down to 24 inches below the surface. Based on current sampling, EPA estimates that approximately 4,800 residential yards may ultimately be addressed within the Response Area (which comprises the portions of the Site within one mile of any of the Waste Piles) as part of the Remedial Action. EPA is aware of a further 393 residential yards within OU-1 but outside the Response Area that meet the action levels set forth in the ROD and have not yet been remediated.

## DEFENDANTS

23. The Defendants are persons within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

24. The Federal Waste Pile was owned and/or operated by the Federal Lead Co. from approximately 1903 to 1923, and by the St. Joe Minerals Corporation from 1923 to 1972. During those periods, these and related entities disposed of mining and milling wastes at the Federal Waste Pile by pumping mine and mill tailings to an impoundment area that would later become known as the Federal Waste Pile.

25. In 1976, the St. Joseph Lead Company donated 8,561 acres of land that included the Federal Waste Pile to the State of Missouri. The State of Missouri developed the area into a state park, which is now known as St. Joe State Park.

26. Defendant MDNR, as a subdivision of the State of Missouri, currently owns and operates the Federal Waste Pile, which is part of St. Joe State Park.

27. Defendant Ben Ellis, in his official capacity as director of the State Parks Division of MDNR, operates the Federal Waste Pile, which is part of St. Joe State Park, by virtue of his authority to control the conduct and decisions of MDNR with respect to St. Joe State Park.

28. The mine waste placed in the Federal Waste Pile contains hazardous substances, including lead.

29. Hazardous substances, including lead, initially deposited at the Federal Waste Pile have come to be located by various mechanisms in residential yards within St. Francois County, including:

   a. Air-borne dispersion and deposition of mine waste by wind;

   b. Water-borne dispersion and deposition of mine waste by rain, snow, and other forms of weather-related water

30. MDNR's operation of the Federal Waste Pile has contributed to the dispersion of mine waste via air- and water-borne deposition by various mechanisms, including allowing the use of all-terrain vehicles on the Federal Pile without adequate dust suppression measures.

## GENERAL ALLEGATIONS

31. Hazardous substances, including lead, have been deposited, disposed of, and placed at the Federal Waste Pile.

32. Hazardous substances, including lead, have been released to the environment at and from the Federal Waste Pile to Residential Yards within St. Francois County.

33. The Site was listed on the National Priorities List, created by Section 105(a)(8)(B) of CERCLA, 42 U.S.C. § 9605(a)(8)(B), on October 14, 1992. See 57 Fed. Reg. 47180.

34. EPA has conducted various response actions at the Site.

35. As a result of these response actions, EPA has incurred response costs in connection with the Site.

## CLAIMS FOR RELIEF

### COUNT I – CURRENT OWNER/OPERATOR LIABILITY

36. Paragraphs 1 through 35 are realleged and incorporated herein by reference.

37. The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

38. The Federal Waste Pile is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

39. There have been releases, within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), and threatened releases, of hazardous substances, within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), at or from the Federal Waste Pile and the Site.

40. The United States has incurred costs of response, within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), in connection with the releases or threatened releases of hazardous substances at or from the Federal Waste Pile and the Site.

41. The United States' response actions at the Site are not inconsistent with the NCP.

42. The Defendants are liable under Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1), as persons who currently own and/or operate a "facility."

43. Pursuant to Section 107(a) of CERCLA, Defendants are liable to the United States for all response costs incurred and to be incurred in connection with the Site.

**COUNT II – LIABILITY FOR PERFORMANCE OF REMEDIAL ACTION**

44. Paragraphs 1 through 43 are realleged and incorporated by reference.

45. The actual and threatened releases of hazardous substances, including lead, at the Site may constitute an imminent and substantial endangerment to public health or welfare or the environment.

46. Implementation of the Remedial Action selected in the ROD for OU-1 is necessary to abate the danger to public health or welfare and the environment posed by the actual and threatened releases of hazardous substances, including lead, at the Site.

47. Pursuant to Sections 106(a) and 107(a) of CERCLA, 42 U.S.C. §§ 9606(a), 9607(a), Defendants are liable for the performance of the Remedial Action.

PRAYER FOR RELIEF

48. Wherefore, the United States respectfully requests that this Court:

   a. Enter judgment in favor of the United States, under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), holding the Defendants liable for all unreimbursed costs incurred by the United States in connection with OU-1 of the Site, including interest;

   b. Enter judgment in favor of the United States, under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), holding Defendants liable for the performance of the Remedial Action selected in the ROD for OU-1 of the Site;

   c. Enter a declaratory judgment of liability against Defendants that will be binding in any action to recover further response costs incurred by the United States in connection with OU-1 of the Site.

     d. Award the United States its costs of this action; and

     e. Grant such other and further relief as the Court deems appropriate.

Respectfully Submitted,

**FOR THE UNITED STATES OF AMERICA:**

Dated: 3/8/19

JEFFREY BOSSERT CLARK
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division
Washington, D.C. 20530

Eric D. Albert
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 514-2800 (direct)
Eric.albert@usdoj.gov

JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Eric Albert, USDOJ/ENRD/EES
601 D St. NW, Washington, DC 20044
202-514-2800 (direct)

## DEFENDANTS
Missouri Department of Natural Resources, Division of State Parks, and Ben Ellis, Director, Missouri Department of Natural Resources, Division of State Parks, in his Official Capacity

County of Residence of First Listed Defendant   Cole County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Timothy P. Duggan, Assistant Attorney General, MOAGO
Supreme Court Building, 221 West High St., PO Box 899
Jefferson City, MO 65102-0899  Tel: 573-751-9802

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

[X] 1  U.S. Government Plaintiff
[ ] 2  U.S. Government Defendant
[ ] 3  Federal Question *(U.S. Government Not a Party)*
[ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 480 Consumer Credit |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | [ ] 862 Black Lung (923) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 751 Family and Medical Leave Act | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| | | | | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | | [X] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

[X] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from Another District *(specify)*
[ ] 6 Multidistrict Litigation - Transfer
[ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. ss 9606, 9607, 9613
Brief description of cause:
For recovery of response costs and performance of the selected remedy

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND:   [ ] Yes   [X] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____
DOCKET NUMBER _____

DATE: 03/08/2019
SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**
RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

United States of America,

        Plaintiff,

v.

Missouri Department of Natural Resources, Division of State Parks and Ben Ellis, Director, Missouri Department of Natural Resources, Division of State Parks, in his Offifical Capacity,

        Defendant,

Case No. 4:19-cv-421

## ORIGINAL FILING FORM

**THIS FORM MUST BE COMPLETED AND VERIFIED BY THE FILING PARTY WHEN INITIATING A NEW CASE.**

☐ THIS SAME CAUSE, OR A SUBSTANTIALLY EQUIVALENT COMPLAINT, WAS PREVIOUSLY FILED IN THIS COURT AS CASE NUMBER _____ AND ASSIGNED TO THE HONORABLE JUDGE _____.

☐ THIS CAUSE IS RELATED, BUT IS NOT SUBSTANTIALLY EQUIVALENT TO ANY PREVIOUSLY FILED COMPLAINT.  THE RELATED CASE NUMBER IS _____ AND THAT CASE WAS ASSIGNED TO THE HONORABLE _____.  THIS CASE MAY, THEREFORE, BE OPENED AS AN ORIGINAL PROCEEDING.

☒ NEITHER THIS SAME CAUSE, NOR A SUBSTANTIALLY EQUIVALENT COMPLAINT, HAS BEEN PREVIOUSLY FILED IN THIS COURT, AND THEREFORE MAY BE OPENED AS AN ORIGINAL PROCEEDING.

**The undersigned affirms that the information provided above is true and correct.**

Date: March 8, 2019          /s/ Eric D. Albert
                                                        Signature of Filing Party